IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| **Walter Delaney Booker, Jr.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:14cv555 (JCC/IDD)** |
| | ) | |
| **A. David Robinson, et al.,** | ) | |
| **Defendants** | ) | |

MEMORANDUM OPINION

Walter Delaney Booker, Jr., a Virginia inmate proceeding pro se, has filed a civil rights

action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons

Act ("RLUIPA"), 42 U.S.C. § 2000cc.   Plaintiff alleges that the defendants – Unit Manager R.

Timmons, Lieutenant B.M. Claude, Sergeant T. Robinson, Sergeant G.D. Faulcon, Lieutenant

Taylor, and Correctional Officer M.L. Rook – have violated his Fourteenth Amendment Equal

Protection rights and his rights under RLUIPA.   Plaintiff also alleges that the defendants' actions

constitute intentional infliction of emotional distress and negligence.   The matter is now before

the Court on defendants' Motion for Summary Judgment, to which plainitff filed a response on

February 26, 2015.   Dkt. 33.

In addition, plaintiff filed his own Motion for Summary Judgment or Partial Summary

Judgment, Dkt. 32, as well as various additional motions.   For the reasons that follow,

defendants' Motion for Summary Judgment will be granted in part and denied in part, without

prejudice to their ability to file a supplemental motion on the merits of plaintiff's RLUIPA claim.

Plaintiff's Motion for Summary Judgment will be denied, without prejudice to renewal at a later

stage of the proceedings, if appropriate.   Plaintiff's Motions to Amend will be granted in part,

and he will be directed to file a second amended complaint; his Motion for Discovery will be

granted in part and denied in part; his Motion for a Restraining Order and Motion for Counsel

will be denied, without prejudice; and his Motion to Strike will be denied.

## I. Background

### A. Undisputed Facts

Plaintiff, a Muslim inmate at Greensville Correctional Center ("Greensville"), began to

grow "his natural goatee style beard" in 2012, in response to a change in Virginia Department of

Corrections ("VDOC") Operating Procedure 864.1.   Am. Compl. [Dkt. 7], at 7 ¶¶ 1-3.

Plaintiff's beard "is around his mouth, beneath his mouth and on the bottom part of his face upon

the chin," id. at 7 ¶ 5, and he cannot physically grow his beard so that it covers his entire facial

area.   See Plaintiff's Response to Motion for Summary Judgment ("Pl.'s Resp.") [Dkt. 33], Ex.

D, Aff. 1 ¶ 3. The amended operating procedure allows all offenders to grow beards no more than

¼ inch long without prior approval.   See VDOC Op. Proc. 864.1(IV)(F)(1) (April 1, 2013).

According to policy, "[t]he beard must cover the entire facial hair area with no shapes or designs

cut into the beard. . . .   To define the beard, the offender may shave hair that grows below the

jaw line and above the line from the bottom of the nose to the middle of the ear ensuring that no

shapes or designs are cut."   Id. (IV)(F)(1)(c)(i)-(ii).   It is undisputed that plaintiff's beard does

not cover his entire facial hair area, but it does not contain any shapes or designs cut into it, and

does not exceed ¼ inch long.   Am. Compl., at 7 ¶¶ 7-9; Pl.'s Resp., Ex. D, Aff. 1 ¶ 4;

Defendants' Memorandum in Support of Summary Judgment ("Defs.' Mem.") [Dkt. 20], at 1-2.

Defendants also do not dispute plaintiff's contention that he cannot physically grow a beard that

is sufficiently dense to comply with Operating Procedure 864.1.

Operating Procedure 864.1 provides that, if an offender refuses to comply with any

grooming standards, including the policies surrounding beards, he will first be ordered to comply. VDOC Op. Proc. 864.1(IV)(H)(1). If the offender does not comply with the order, he will be charged with a disciplinary offense. Id. (IV)(H)(1)(a). In addition, such an offender "will remain in segregation status until [he] is in compliance with the grooming standards or is housed in the Grooming Standards Violator Housing Unit [at Wallens Ridge State Prison]." Id. (IV)(H)(2); I(1). In their affidavits, defendants state that non-compliant offenders "are not permitted to exit the housing unit to attend programming in the support building including school, law library and recreation. Offenders are not kept from meals for non-compliance with the grooming policy." Defs.' Mem., Ex. I (Timmons Aff.) ¶ 7. The source of these sanctions is unclear, as they do not appear to be among those enumerated in Operating Procedure 864.1. It is undisputed that, although plaintiff has received several disciplinary charges related to his non-compliance with the grooming policy, he has not been held in segregation for the pendency of his non-compliance, nor has he been transferred to Wallens Ridge.

On August 12, 2013, plaintiff approached Unit Manager Timmons and asked to have his photograph taken for a second identification card, as inmates are allowed one identification card with facial hair and one without. Am. Compl., at 7 ¶ 12; VDOC Op. Proc. 864.1(IV)(F)(1)(b). "Timmons instructed plaintiff that he could not grow his beard and he must shave." Am. Compl., at 7 ¶ 13. Plaintiff was not provided with a second identification photograph. Id. at 11 ¶ 74. Timmons also told plaintiff that his beard needed to cover plaintiff's entire face. Id. at 7 ¶ 14.

Plaintiff states that, on October 2, 2013, Lieutenant Claude and Sergeant Robinson refused to let plaintiff into the dining hall for lunch unless he shaved. Id. at 8 ¶ 21. On October 20, 2013, Claude prevented plaintiff from going outside for recreation unless he shaved, and

instructed Sergeant Robinson to prevent plaintiff from going outside.  Id. at 8 ¶¶ 24, 27.   Claude

also "harassed plaintiff for exercising his religious practice as a [M]uslim."  Id. at 8 ¶ 33.

On the morning of November 7, 2013, Sergeant Faulcon approached plaintiff "in a

threatening and intimidating manner and stated 'shave or else.'"  Id. at 8 ¶¶ 39-40.   Plaintiff did

not shave his beard.   Timmons issued a disciplinary report to plaintiff on December 9, 2013, for

which plaintiff was sanctioned.[1]   Plaintiff states that he has suffered ongoing "harassment" from

the defendants since his disciplinary offense.   He also alleges that he has been denied the use of

the law library on multiple occasions.  Id. at 9 ¶¶ 57-64.

Defendants deny that plaintiff's meals were withheld.  See, e.g., Defs.' Mem., Ex. II

(Claude Aff.) ¶ 7; Ex. III (Robinson Aff.) ¶ 5.   Defendants admit that plaintiff could have been

forbidden from attending recreation, school, and the law library, but do not remember any

specific instances of preventing him from attending these activities.  See id., Ex. I (Timmons

Aff.) ¶ 7; Ex. II ¶ 7.   Defendant Claude specifically states that he has never denied an inmate

access to the law library due to grooming non-compliance, id. Ex. II ¶ 7, and defendant Robinson

specifically states that he has never denied plaintiff access to the law library, id. Ex. III ¶ 6.[2]

## II. Standard of Review

A court should grant summary judgment if the evidence on file "shows that there is no

---

[1] Plaintiff initially brought a Fourteenth Amendment Due Process claim based on the allegedly false nature of this offense, as well as alleged insufficiencies in the disciplinary process in general.  By Order dated September 22, 2014, the Court dismissed plaintiff's Due Process claims, pursuant to 28 U.S.C. § 1915(A)(b)(1).  See Dkt. 9.  Despite this fact, both parties have provided extensive documentary evidence about plaintiff's various disciplinary hearings and security classification hearings.   As plaintiff's Due Process claims are no longer before the Court, there is no need to discuss the facts of plaintiff's disciplinary process.

[2] Defendants also state that plaintiff has never "talked to medical staff about his alleged inability to grow a full beard."  Defs.' Mem., Ex. VII (Taylor Aff.) ¶ 6.  It is unclear why plaintiff's inability to grow a beard would be an issue for the medical department at all.

4

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The moving party bears the burden of proving that judgment as a matter of law is appropriate.   See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution.   Id. at 322.   Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party.   United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are those which are material.   "[T]he substantive law will identify which facts are material.   Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   Anderson, 477 U.S. at 248.   An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice."   Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).   Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).   The nonmoving party must present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts."   Id. at 586; see also Celotex, 477 U.S. at 325.

When both parties have filed a motion for summary judgment, a court must evaluate the

merits of each motion individually and determine whether the moving party is entitled to judgment as a matter of law. See Philip Morris, Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997). In reviewing these motions, a court must draw all reasonable inferences against the party whose motion is being considered. See Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal citations omitted). The court in this situation is not required to grant summary judgment for one side or the other. See LewRon Television, Inc. v. D.H. Overmeyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968) ("[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other.").

### III. Equal Protection

#### A. Legal Standard

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Clause protects against arbitrary classifications by state actors and ensures that all similarly situated individuals are treated in the same manner. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To succeed on an equal protection claim, a plaintiff must show that (1) he was treated differently from others (2) who were similarly situated and (3) that this unequal treatment was the result of intentional or purposeful discrimination. See Plyer v. Doe, 457 U.S. 202 (1982); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). If plaintiff is not a member of a suspect class such as a particular race or religion, a court considering such a claim must also inquire "whether the [challenged] classification serves a legitimate state interest and whether the challenged classification is rationally related to it." Khaliq v. Angelone, 72 F. App'x 895, 901 (4th Cir. 2003) (citing Moss v. Clark, 886 F.2d 686,

6

690 (4th Cir. 1989)).   As prisoners are not a suspect class, see, e.g., Waters v. Bass, 304 F.

Supp. 2d 802, 810 (E.D. Va. 2004) (Ellis, J.) (internal citations omitted), plaintiff in this case

must show that his particular classification – an inmate with a beard not in compliance with

VDOC grooming procedures who is being denied particular institutional privileges – serves no

legitimate state interest.

### B. Analysis

The evidence shows that defendants did not violate plaintiff's equal protection rights.

Plaintiff alleges that he was treated differently from other inmates with beards.   Specifically, he

states that, although he was forced to shave before attending events or programs, other inmates

with beards were not.   In support of this conclusion, he has provided affidavits from other

inmates alleging that they were able to attend various prison programs without shaving.   See

Am. Compl., Ex. W; Pl.'s Resp., Ex. D, Affs. 2-10.   These affidavits do not show, however, that

these inmates were similarly situated to plaintiff.   The inmates do not attest that they had beards,

like plaintiff's, that did not comply with VDOC Operating Procedures.   The mere fact that these

other inmates have beards – a fact which itself is not conclusively established – is not sufficient

to show that these other inmates are similarly situated to plaintiff.   Plaintiff therefore cannot

meet his threshold burden of proving that he is being treated differently from similarly situated

individuals.

Plaintiff also appears to allege a violation of the Equal Protection Clause due to the fact

that he has not been provided with a second identification card photograph, in contrast to other

inmates with beards.   However, there is no evidence in the record to show that other inmates

have, in fact, been provided with photographs.   Therefore, there is no evidence that plaintiff has

been treated differently than any other individual as a result of his beard.   The defendants are

therefore entitled to summary judgment on plaintiff's equal protection claim.

## IV. Tort Claims

### A. Intentional Infliction of Emotional Distress

Plaintiff states that the defendants' actions constituted intentional infliction of emotional distress. He specifically states that the defendants' actions caused him to feel depressed, intimidated, hopeless, and to suffer from physical symptoms such as chest pains and hypertension. See, e.g., Am. Compl., at 17-18 ¶ 113. From the evidence in the record, however, it is clear that the defendants' actions did not constitute intentional infliction of emotional distress.

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove, by clear and convincing evidence, that: (1) the defendants acted intentionally or recklessly; (2) the defendants' behavior was outrageous or intolerable; (3) a causal connection exists between the defendants' behavior and the plaintiff's emotional distress; and (4) the plaintiff's emotional distress was severe. Supervalu, Inc. v. Johnson, 276 Va. 356, 370, 666 S.E.2d 335 (2008). To show that defendants' actions fit within the first element, "a plaintiff must show that 'the wrongdoer had the specific purpose of inflicting emotional distress or [that] he intended his specific conduct and knew or should have known that emotional distress would likely result.'" Taylor v. CNA Corp., 782 F. Supp. 2d 182, 205 (E.D. Va. 2010) (Ellis, J.) (quoting Womack v. Eldridge, 215 Va. 338, 342, 210 S.E. 145, 148 (1974)). To meet the second element, a plaintiff must show that the defendants' conduct was so extreme "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Russo v. White, 241 Va. 23, 27, 400 S.E.2d 160, 162 (1991) (internal quotations omitted). To be "outrageous," the conduct must involve more than simply "bad

8

manners and mere hurt feelings." Ruth v. Fletcher, 237 Va. 366, 368, 377 S.E.2d 412, 418 (1989) (quoting Womack, 215 Va. at 342).

The record here shows that the defendants' conduct was not so outrageous "as to go beyond all possible bounds of decency." Russo, 241 Va. at 27.   The defendants, at most, have denied plaintiff the right to participate in various prison programs.   There is nothing in the record to indicate that the defendants subjected the plaintiff to either verbal or physical abuse, or took any other action which would constitute "outrageous" conduct.   Accordingly, the defendants cannot be liable for the intentional infliction of emotional distress.   Their Motion for Summary Judgment therefore will be granted.

### B. Negligence

Plaintiff also alleges that the defendants' actions constituted negligence under Virginia law.   The defendants are entitled to summary judgment on this claim.   To state a claim for negligence, a plaintiff must show that the defendants had a legally enforceable duty, that they breached this duty, and that the breach of this duty caused injury to plaintiff.   See Talley v. Danek Medical, Inc., 179 F.3d 154, 158 (4th Cir. 1999).   An individual generally has a legal duty to act as a reasonable person under the law.   See id. (quoting Moore v. Va. Transit Co., 188 Va. 492, 50 S.E.2d 268, 271 (1948)).   The violation of a statute or ordinance can also provide proof of a breach of duty, if the statute violated is one that imposes an affirmative duty on individual to act in a certain manner.

Plaintiff states that Virginia Code §§ 53.1-10, 32; 2.2-2812, 2900 imposed a legal duty on defendants.   However, these provisions provide only general guidelines for the VDOC and its employees.   They do not impose any legally-binding obligations on these employees.   Thus, employees cannot breach any legal duty by failing to comply with the provisions of these laws.

It is also unclear why, specifically, plaintiff believes that the defendants have breached a legal duty to him, as he does not explain what specific actions he believes constitute such a breach. Plaintiff has therefore not shown that the defendants are liable for negligence under Virginia law. Defendants' Motion for Summary Judgment therefore will be granted on this claim.

## V. RLUIPA

### A. Legal Standard

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government can show that the burden furthers a "compelling governmental interest and is the least restrictive means of furthering . . . that interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). Pursuant to the law, once a plaintiff presents a prima facie case that a regulation "substantially burdens [his] exercise of religion," id. § 2000cc-2(b), "the government must prove that the burden in question is the least restrictive means of furthering a compelling governmental interest." Lovelace v. Lee, 472 F.3d 174, 186 (4th Cir. 2006) (citing 42 U.S.C. § 2000cc-1(a)).

To show that a policy or regulation imposes a "substantial burden" on a plaintiff's exercise of religion, the plaintiff must show that the policy is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981). Phrased another way, a policy imposes a substantial burden when it "forces a person to 'choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand.'" Lovelace, 472 F.3d at 187 (quoting Sherbert v. Verner, 374 U.S. 398, 404 (1963)) (alterations in original). When considering whether a policy

10

imposes a substantial burden on the exercise of religion, a court may not weigh the validity or importance of the burdened practice to the professed religion, but may analyze the sincerity of the plaintiff's beliefs. Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (citing 42 U.S.C. § 2000cc-5(7)(A)).

Once the plaintiff has met his burden of proving a substantial burden on the exercise of his religion, the government must show that (1) the policy furthers a compelling governmental interest *and* (2) it is the least restrictive means of furthering this interest.   When determining whether a policy meets this standard, a court should give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with considerations of costs and limited resources." Cutter, 544 U.S. at 723 (internal citations omitted).   Issues of security are particularly paramount in this analysis. See, e.g., Lovelace, 472 F.3d at 190.   In determining the validity of the government's justification, however, "a court should not rubber stamp or mechanically accept the judgments of prison administrators." Id. (citing Shimer v. Washington, 100 F.3d 506, 510 (7th Cir. 1996)).   Thus, the government must provide evidence sufficient to support the implementation of the policy, and must not ask the court to simply infer its reasons for the particular policy or regulation. Cf. id. at 191 ("[A] court [cannot] suggest[] on its own the governmental interest that might be present.").

## B. Analysis

From the evidence presented, plaintiff has met his burden of showing that the defendants' actions impose a substantial burden on the exercise of his religious rights.   He states, and defendants do not dispute, that he grows a beard in accordance with his Muslim faith.   However, because his natural beard makes it impossible for him to comply with VDOC Operating

11

Procedure 864.1, he is faced with the choice of either shaving his beard and violating his religion, or keeping his beard and suffering consequences such as being denied access to the law library, meals, vocational school, and recreation. Defendants admit that plaintiff was denied access to school and outdoor recreation, and it is disputed as to whether plaintiff was denied access to meals and the law library. Accordingly, regardless of the reasons for plaintiff's non-compliance, it is clear that, due to the shape and size of his beard, his ability to exercise his religious rights has been substantially burdened. See, e.g., Sherbert, 374 U.S. at 404.

Defendants have provided no justification for this burden, beyond a general assertion that VDOC Operating Procedure 864.1 prohibits goatee-style beards. Defendants have not explained why such a policy is necessary, or whether this policy is the least restrictive means of promoting any institutional interests. Indeed, they have not explained what specific institutional interests this policy promotes. In addition, they have not specifically explained how plaintiff's beard does not comply with policy, or why his specific failure to comply impacts the safety and security of the institution. In Lovelace, the Fourth Circuit, faced with defendants who similarly "assert[ed] simply 'a legitimate interest in removing inmates from dietary programs where the inmates flout prison rules reasonably established in order to accommodate the program,'" held that the defendants "[did] not elaborate how this articulated 'legitimate interest' qualifies as compelling; they [did] not present any evidence with respect to the policy's security or budget implications." Lovelace, 472 F.3d at 190. Accordingly, the court found that," [g]iven the superficial nature of the defendants' explanation, we cannot at this stage conclude that the asserted interest is compelling as a matter of law." Id. Here, the defendants' conclusory reliance on VDOC policy is similarly not sufficient to show that the policy furthers any legitimate government interest, let alone a compelling one. Defendants have thus failed to meet

12

their burden of proof under RLUIPA.

The defendants' complete failure to provide any justification for the implementation of VDOC Operating Procedure is fatal to their current Motion for Summary Judgment.[3]   Therefore, defendants' Motion for Summary Judgment will be denied, without prejudice to their ability to re-file a summary judgment request, restricted to the issue of whether plaintiff's rights under RLUIPA have been violated, after plaintiff submits his second amended complaint, as discussed below.[4]

## VI. Pending Motions

### A. Motions to Supplement

Plaintiff has filed four "Motion[s] to Supplement Facts In Amended Complaint," in which he seeks to add additional facts to his complaint "that . . . serve to amplify allegations contained in [the] complaint, however [sic] do not change the nature of the claims."   See Mot. to Supp. Facts [Dkt. 28], at 1.   In these motions, plaintiff discusses events that occurred after the filing of his amended complaint, but which appear to be relevant to his RLUIPA claim. Specifically, he alleges that he was denied access to a religious service on February 20, 2014, and access to the law library on March 3, 2014.   See Dkts. 29, 35.   Thus, plaintiff's Motions will be construed as Motions to Amend, and will be granted in part, to the extent that he will be directed to submit a second amended complaint.   This second amended complaint must be limited to the *sole* remaining claim in this action, that is, his RLUIPA claim.   To assist the defendants in

---

[3] Defendants also have not provided any explanation for the fact that the sanctions imposed on plaintiff do not appear to be enumerated anywhere in Operating Procedure 864.1.

[4] Defendants argue that, even if they are found to have violated plaintiff's rights under RLUIPA, they are entitled to qualified immunity.   As more factual development is necessary to determine the merits of this claim, the Court defers ruling on qualified immunity until the conclusion of supplemental briefing.

responding to this second amended complaint, plaintiff is directed to include *all* facts pertaining to his RLUIPA claim in his second amended complaint, which will become the sole operative complaint in the case.   Any facts pertaining to plaintiff's disciplinary hearings, tort claims, or other claims that have been dismissed will be stricken from the second amended complaint.

### B. Motion for Discovery

Plaintiff has also filed a Motion for Discovery, in which he requests several documents that he believes are relevant to his case.   Specifically, he requests: (1) the VDOC Facility Criteria Booklet for 2013-2014; (2) a copy of VDOC Operating Procedures 830.1-830.5; (3) his medical records from his previous incarceration; (4) "documentation of the training all officers have received on the implementation of Operating Procedure 864.1; and (5) identification photographs of plaintiff clean shaven and "showing facial hair area." Dkt. 31.[5]   Defendants have interpreted plaintiff's fifth request as asking for photographs of plaintiff "clean shaven and showing facial hair."   Defendants' Response to Plaintiff's Motion for Discovery, at 1. Defendants have consented to providing plaintiff with items (2) through (4).   See id. at 2. Defendants object to plaintiff's first request on the ground that the facility criteria booklet is a security document that offenders are not permitted to access.   Defendants also object to plaintiff's fifth request on the basis that plaintiff, were he allowed to possess his identification photographs, could manipulate the photographs and create an altered identification card.   Id.

Because the defendants do not object to plaintiff's second, third, and fourth requests, the Court grants these requests.   In deference to the defendants' security concerns, the Court denies plaintiff's first request.   However, the court grants plaintiff's fifth request, in part.   Because it is

---

[5] Plaintiff has also requested "any other pertinent data the court needs in order to resolve issues of material fact in the possession of VDOC . . . including interrogatories if need be."   To

unclear whether a photograph of plaintiff with facial hair exists, defendants are directed to clarify for the Court whether such a photograph exists.   If one does exist, it may aid in the adjudication of plaintiff's RLUIPA claim.   Therefore, if a photograph of plaintiff with facial hair exists, defendants are directed to file this photograph with the Court under seal.   Plaintiff will not be entitled to receive a copy of this photograph.

## C. Motion to Strike

Plaintiff has also filed a Motion to Strike the Affidavits of the Defendants, alleging that they were made in bad faith.   Dkt. 30.   Pursuant to Fed. R. Civ. P. Rule 56(h), if the court finds that an affidavit submitted in support of a summary judgment motion is made in bad faith, the court may order the submitting party to pay the other party's expenses, including attorneys' fees. The submitting party may also be subjected to sanctions.   Plaintiff's Motion must be denied, as he has not provided any evidence – other than his own disagreement with defendant's affidavits – that the defendants' affidavits were submitted in bad faith.

## D. Motion for Counsel

Plaintiff has requested the appointment of counsel to assist him in litigating his case.   A court may request an attorney to represent an indigent plaintiff proceeding in forma pauperis. 28 U.S.C. § 1915(e)(1).   The Fourth Circuit, however, has limited the appointment of counsel to cases where "exceptional circumstances" exist, such as cases with particularly complex factual and legal issues or with a litigant who is unable to represent himself adequately.   Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984).   It is unnecessary at this time to appoint counsel for plaintiff, as plaintiff's statements that he is indigent and confined in segregation do not constitute "exceptional circumstances" that would warrant appointment of counsel.   To date, plaintiff has

---

the extent that plaintiff seeks a right to conduct unlimited discovery, his request is denied.

ably filed his complaint and amended complaint, has timely submitted all required documents, has filed detailed briefs and requests for discovery, and has shown himself to be adequately able to represent himself.   Thus, plaintiff's request for the appointment of counsel will be denied, without prejudice to renewal at a later stage of the proceedings, if appropriate.

### E. Motion for Restraining Order

Lastly, plaintiff has requested a "restraining order against all defendants and an order to restrain from confiscation of plaintiff's legal materials."   Dkt. 37.   To the extent that plaintiff requests a temporary restraining order, his request is governed by Fed. R. Civ. P. 65(b).   Rule 65(b) permits a court to issue a temporary restraining order without notice to the opposing party only if the requesting party shows through an affidavit or verified complaint that he will suffer "immediate an irreparable injury, loss, or damage."   Fed. R. Civ. P. 65(b)(1)(A).   Plaintiff has not indicated that he will suffer loss or injury of any kind due to the defendants' actions.   He is accordingly not entitled to a temporary restraining order at this time.

To the extent that plaintiff requests a preliminary injunction, he is also not entitled to relief at this time.   The United States Supreme Court has stated that, for a plaintiff to obtain a preliminary injunction, he must demonstrate: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm without such injunctive relief; (3) that the balance of equities weighs in his favor; and (4) that granting a preliminary injunction is in the public interest.   Winter v. Natural Res. Defense Council, Inc., 555 U.S. 7, 20 (2008).   In order to obtain injunctive relief, a plaintiff must satisfy all four of the Winter factors.   See Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 347 (4th Cir. 2009), vacated by Real Truth About Obama, Inc. v. Fed. Election Comm'n, 559 U.S. 1089 (2010), reissued, 607 F.3d 355 (4th Cir. 2010).   As plaintiff cannot meet any of the above factors, his request must be

denied, without prejudice to renewal, if appropriate.

## VII. Conclusion

For the above-stated reasons, defendants' Motion for Summary Judgment will be granted in part and denied in part.   Plaintiff's Motion for Summary Judgment will be denied, without prejudice.   An appropriate Order will issue.

Entered this _____ day of _____ 2015.

Alexandria, Virginia

/s/
James C. Cacheris
United States District Judge

17